## VESTAL v. MOORE.

### Opinion delivered December 22, 1925.

1. MINES AND MINERALS—RATIFICATION OF JOINT PURCHASE.—In an action for accounting against a trustee, brought by the persons for whom he bought an oil and gas lease, evidence *held* to sustain the chancellor's finding that plaintiffs did not ratify the acts of the defendant.

2. MINES AND MINERALS—LIABILITY OF TRUSTEE.—Where a trustee for joint purchasers of an oil and gas lease represented that he paid $12,000 for the lease, of which sum he paid one-third, when, in fact, he paid $8,000, all of which was furnished by his associates, upon the venture proving a losing one he will be required to account to his associates for one-third of $8,000.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens*, Chancellor; affirmed.

*R. W. Huie*, for appellant.

The real agreement both in law and in fact was that each would own an interest in proportion to the actual amount of money invested. Vestal did not invest anything and never in fact owned any interest or share whatever. The law of trusteeship fixed the status of all parties at the time the lease was bought and paid for. The fund he held was a trust fund, pure and simple. The parties who furnished the money to the trustee for the

purpose of buying the lease are the real owners of the lease. 243 S. W. 812 (Ark.). The case of *Jones* v. *Kinney,* 146 Wis. 130, Ann. Cases 1912C, p. 200, relied on by appellees, is not in point, for in that case the parties jointly agreed beforehand that each should pay a certain fractional part of the purchase price, regardless of what the purchase price might be, whereas, in this case, each party agreed to put in a certain fixed sum of money.

*McMillan & McMillan,* for appellees.

The chancellor was justified in finding that Vestal agreed to take an interest in the lease and pay money for his interest just like the others, by Vestal's own testimony, and in finding that the interest he agreed to take was one-third. His finding that Vestal is estopped to deny that he agreed to take a one-third interest is in accordance with the preponderance of the testimony. If the contract had been carried out without fraud, Vestal would have paid for his interest one-third of the total amount, and the plaintiffs would have had the benefit of that, and would have been entitled to have their proportion of the $440 that remained unexpended. The chancellor's finding on this branch of the case is sustained by the law of joint adventures. 33 C. J. 857, § 50, *et seq.;* 4 Crawford's Digest, p. 3918, cases cited; 106 Am. St. Rep. 336; Ann. Cases, 1912C, p. 200.

SMITH, J. A. J. Vestal resides in Arkadelphia, and is engaged in the real estate business there. Upon the coming in of the Busey oil well at El Dorado, which was the discovery well, he extended his operations to that field, and acquired oil leases lying south, east and west of that well. He learned that an oil lease could be obtained on a forty-acre tract of land lying north of the Busey well, and he was anxious to purchase this lease, but he did not have available the funds to do so. He took up the question of the purchase of this lease with certain of his acquaintances in Arkadelphia, and they became interested in the proposition and authorized Vestal to buy it. Pending these negotiations, this lease was sold, but Vestal learned that a lease on another

forty-acre tract, also lying north of the Busey well, could be purchased, and Vestal's associates authorized him to buy it. It was not known just what this lease would cost. Vestal stated that he wanted to have the controlling interest, and would reserve that interest for himself, but that his associates might pay in such sums as they pleased, and that the lease would be purchased as cheaply as possible, and each person paying in money should have such proportionate part of the lease as the sum of money he paid in bore to the total cost of the lease. Dr. Moore advanced Vestal $1,500, and so did H. H. Heard, and other parties advanced different sums of money, making a total of $8,500.

Vestal took an assignment of the lease to the forty acres in his own name as trustee. The lease recited a consideration of a dollar paid and other good and valuable considerations, and it is certain that, at the time the assignment of the lease to Vestal was taken, all of his associates, except Heard, thought the lease had cost $12,000.

After the lease had been assigned to Vestal he advised his associates that he had only paid $8,000 for the lease, and that he had $500 to return to them proportionately, less the expense he had incurred, and in the letter communicating this information he offered to continue to execute his trust on the basis of ten per cent. of such profit as might be realized out of the transaction. This offer was rejected, and Moore and his other associates, except Heard, demanded the return of their money on the ground that Vestal had deceived them as to the cost of the lease. Vestal offered to assume the transaction individually, provided his associates would accept his note for the amounts they had paid into the venture. Moore and the others who were demanding the return of their money declined to accept Vestal's note, and demanded cash, which Vestal admitted he was unable to pay. But, before Vestal made the disclosure to his associates that the lease had not cost $12,000, he suggested that some one else take the title as trustee, and

it was agreed that the lease should be assigned to Moore, and this was done. It appears that the lease was assigned to Moore about sixty days before Vestal's disclosure was made concerning the cost of the lease.

There is some conflict in the testimony as to the purpose of this assignment, and Vestal testified that he suggested the assignment because he had no beneficial interest in the transaction, and he contends that, when this assignment was made, his associates were given, not only what they thought they had bought, a two-thirds interest, but a larger interest, to-wit, the whole interest, and that they were therefore not damaged by his false representations in regard to the cost of the lease.

The testimony of Moore and his associates is to the effect that, shortly after the lease was assigned to Vestal, the fact had been developed, through drillings for oil by other parties north of the Busey well and the failure to find oil in that direction, that the lease had lost much of its value, and this fact was known to all parties when the lease was assigned to Moore; but it was not known even then that it had not cost $12,000, and the testimony of Moore and his associates is to the effect that, as soon as they were apprised of the deception which had been practiced upon them, they demanded the return of their money, and that Vestal offered to take over the lease for his own individual account by giving his note for the various sums which the investors had paid in, but they were unwilling to accept his note, as they regarded it as of no value.

After the assignment of the lease to Moore, the testimony shows that he attempted to sell it, and that he assigned ten acres thereof to induce a driller to drill a well, which came in as a dry well. On behalf of Vestal it is insisted that this conduct shows a ratification; but the testimony on behalf of Moore and his associates is that this was done with the consent of all parties in interest and for the purpose of making the best of a bad bargain.

The controversy between the parties culminated in this litigation, which was brought by the respective investors to compel Vestal to account for his misrepresentations. These suits were consolidated, and the court granted the relief as prayed. Heard declined to join in these suits, as he stated that Vestal had told him, before he paid in his money, that the lease had only cost $8,000, and that he knew what he was getting when he paid in his money. But, as we have said, this information was not possessed by any of the plaintiffs when their money was paid in.

The court found the facts as alleged in the complaints, and, in effect, found that the parties had entered upon a joint purchase whereby they were to buy an oil lease for $12,000, of which the defendant Vestal was to own and pay for one-third, and that each investor's interest in the lease was determined by the proportion which his payment bore to the total cost, after Vestal was charged with the cost of a third interest which he represented he had bought for himself.

The court further found that "the title of the lease was to be taken in the name of one of the joint owners for the benefit of all the parties, and in proportion to the amount of money each agreed to pay, and the court finds that all of the parties paid in what they agreed to, except the defendant, Vestal, and that he represented that he was putting in one-third of the purchase price, and the court further finds that, after the lease was purchased and during the time when it had its highest value, the defendant continued to claim one-third interest, and that the lease only cost $8,000, and the defendant spent $60 for expenses, and has $440 left, and that the total amount paid out for the lease and expense was $8,060, and that Vestal ought to have paid in $2,686.66, and owes to the plaintiffs $2,565.73, for which they are entitled to a judgment against him, to be distributed as follows."

Upon this finding the court rendered judgment against Vestal in favor of each investor for his proportionate part of the $2,686.66 which Vestal should have

paid in, and ordered that the sum so adjudged should be declared a lien on the equitable interest of Vestal in the thirty acres undisposed of.

We think the testimony warranted the finding of fact made; indeed, it is an undisputed fact that Vestal misrepresented the cost of the lease to all his associates except Heard, and that they went into the venture on the assumption that Vestal had bought and paid for a one-third interest in the lease for himself.

The testimony is conflicting on the subject of ratification, but we think the finding of the court on that issue is not clearly against the preponderance of the evidence, and that the lease was assigned to Moore, not in ratification of the transaction, but for the purpose only of substituting trustees, and that Moore took the title as trustee for the same persons, and for the same interest, for which Vestal had been trustee. In other words, there was a mere substitution of trustees, and no change of beneficial interest. And we are also of the opinion that the efforts of Moore to sell the lease and his action in assigning ten acres of it was not a ratification of the purchase of the whole interest for the plaintiffs in the suits, as the preponderance of the testimony shows that Moore was acting with the consent and on behalf of all the original investors, including Vestal, in what he did in that behalf.

Appellant Vestal insists that the decree is erroneous for the reason that the investors got what they bought, got even more than they thought they had bought, and that they are in no position to complain that they were damaged.

It is easy to surmise that Vestal would have assumed a very different attitude had oil been found on this lease. At any rate, we see no injustice in requiring him to account for his trusteeship on the basis on which he induced the investors to intrust him with the investment of their money. He represented that he had bought a third interest for himself, and that the lease had cost $12,000. On this basis he should have paid in $4,000, but

the decree of the court only required him to do what he represented to his associates he had done, that is, to pay a third of what the lease actually cost, for it was on the strength of this misrepresentation that he induced his associates to invest their money. Vestal had no right to speculate on the possibilities of this lease at the expense of his associates, and without risk to himself.

The undisputed evidence shows that Vestal agreed to take an interest in the lease and pay proportionately for his interest, just as his representations induced the others to do, and the interest he had agreed to take was one-third of the whole, and now that the venture has resulted in a loss, there is no injustice in requiring him to share this loss in the proportion he would have shared if he had not deceived his associates, and by his misrepresentations induced them to invest their money.

We think the testimony does not show a ratification of the purchase by the investors, and there is no error in compelling Vestal to execute the representations made by him to his associates, on the faith of which they entered into the enterprise.

The decree of the court below is therefore affirmed.